

**CLERK, U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS**

# ENTERED

THE DATE OF ENTRY IS ON
THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

Signed July 25, 2022

_____
**United States Bankruptcy Judge**

_____

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

| | | |
|---|---|---|
| BRUCE H. BEAL and<br>KAREN L. BEAL,<br><br>Debtors. | §<br>§<br>§<br>§<br>§ | CASE NO. 22-50000-rlj13 |

## MEMORANDUM OPINION

The debtors, Bruce and Karen Beal, object to the proof of claim filed by Capital One Auto Finance ("Capital One"). The objection was raised at the Court's regular chapter 13 docket held on May 25, 2022. After a short hearing at the conclusion of the Court's docket, the Court took the matter under advisement. For the reasons stated below, the Court sustains the Beals' objection and disallows Capital One's claim.

The Court has jurisdiction of this matter under 28 U.S.C. § 1334(b); this dispute is a core proceeding under 28 U.S.C. § 157(b)(2)(B).

### BACKGROUND

This claim objection arises under the bankruptcy of Bruce and Karen Beal. The Beals have filed for bankruptcy under chapter 13 of the Bankruptcy Code four times. They first filed

1

for bankruptcy on November 4, 2015. The Court dismissed that case without prejudice on May 19, 2017 because the Beals failed to make required payments under the plan. Bruce Beal filed for bankruptcy again on November 5, 2018. The Court dismissed that case without prejudice on November 28, 2018 because Mr. Beal failed to complete credit counseling and failed to submit required documentation. The Beals filed for bankruptcy a third time on March 4, 2019 ("2019 Case"). The Court dismissed that case without prejudice on February 11, 2021 because the Beals failed to make required payments under the plan. The Beals filed their current bankruptcy petition on January 3, 2022. On June 14, 2022, the Court confirmed the Beals' plan.

Capital One filed a proof of claim in the 2019 Case for an unsecured claim of $14,305.53. Case No. 19-50053, Claim No. 7-1. The Beals had entered a contract ("Contract") to purchase a used 2008 Ford F-150 ("Vehicle") from Reagor-Dykes Imports, LP ("Reagor-Dykes"). *Id*. at Part 2. Capital One financed the purchase and was assigned Reagor-Dykes' interest in the Contract. *Id*. Reagor-Dykes delivered the Vehicle to the Beals but never provided the title to the Vehicle to either the Beals or Capital One. Reagor-Dykes filed for bankruptcy on August 1, 2018, shortly after the Beals purchased the Vehicle. Reagor-Dykes' bankruptcy and collapse is the ostensible reason for its failure to provide the title to the Vehicle. Without title, the Vehicle could not be registered or insured and thus was rendered unusable. This is still the case.

Capital One's claim in the 2019 Case was for the amount due under the Contract. Although Capital One filed its claim as unsecured, the plan in the 2019 Case ("2019 Plan") classified the claim as secured in the amount of $13,985.50. Case No. 19-50053, ECF No. 65 at 4. The 2019 Plan treated the Vehicle as surrendered, stating, "the surrender of the *Collateral* described herein will provide for the payment of all or part of a claim against the *Debtors(s)* in

the amount of the value given herein." *Id*. (emphasis in original).  Capital One never objected to confirmation of the 2019 Plan.

Although the Beals surrendered the Vehicle under the 2019 Plan, Capital One never took possession of the Vehicle.  Capital One says that, on account of Reagor-Dykes' bankruptcy and collapse, it is unable to determine if Reagor-Dykes ever recorded its security interest in the Vehicle.  While Capital One holds the security agreement creating a security interest against the Vehicle, it questions whether its security interest in the Vehicle is perfected without proof that its lien is recorded on a certificate of title.  It thus filed its proof of claim in the 2019 Case as unsecured.  Capital One says it cannot be sure it has a legal right to repo the Vehicle.  At the time of the hearing on this claim objection, the Vehicle was still in the Beals' possession.

After the 2019 Case was dismissed, Capital One filed a proof of claim in the Beals' current case ("2022 Case"), this time for an unsecured amount of $23,356.24.  ECF No. 22-50000, Claim No. 8-1, Part 2.  The claim increased since the 2019 Case from the continued accrual of interest.  The Beals objected to Capital One's claim—the objection before the Court now.  The Beals argue that the claim is void due to a breach of contract or, in the alternative, is limited to its treatment under the 2019 Plan by the doctrine of res judicata.

On June 14, 2022, the Court confirmed the Beals' plan in the 2022 Case ("2022 Plan"), while this claim objection was still pending.  Unlike the 2019 Plan, which treated Capital One's claim as secured and subject to surrender, the 2022 Plan treats Capital One's claim as unsecured in the amount of $13,985.00.  Case No. 22-50000, ECF No. 45 at 4.  Although they did not formally treat the Vehicle as surrendered, the Beals stated at the hearing on the claim objection that they still want Capital One to recover the Vehicle.  On June 21, 2022, the Court entered an order lifting the automatic stay to allow Capital One to proceed to take possession of the Vehicle.

3

**DISCUSSION**

"A claim is not allowable against a debtor if that claim is not enforceable against the debtor under 'any agreement or applicable law.'" *In re Jobs.com, Inc.*, 283 B.R. 209, 213–14 (Bankr. N.D. Tex. 2002) (quoting 11 U.S.C. § 502(b)(1)).[1]  The Beals submit that Capital One's claim is unenforceable under Texas contract law because Reagor-Dykes breached the Contract by not supplying the Beals with title to the Vehicle.  The Beals contend they may bring all claims they have against Reagor-Dykes under the Contract against Capital One as assignee.  Alternatively, the Beals argue Capital One's claim is limited to its treatment under the 2019 Plan by the doctrine of res judicata.

Although the Beals contend that res judicata is their fallback position, that issue must be addressed first, as res judicata is a double-edged sword.  While the doctrine, if applicable, would limit Capital One's claim to its treatment in the 2019 Case, it would also preclude the Beals from bringing their breach-of-contract claim, as res judicata bars all claims that "could and should have been brought in the earlier litigation." *D-1 Enters., Inc. v. Com. State Bank*, 864 F.2d 36, 38 (5th Cir. 1989).  As Capital One was able to bring its claim in the 2019 Case, so the Beals were able to raise their breach-of-contract claim—if res judicata applied here, *both* parties' claims would be barred.  The Court accordingly will begin its analysis with the application of res judicata.

**I.    Res Judicata**

The Beals contend that Capital One's claim in the 2022 Case should be limited, under the doctrine of res judicata, to the amount and treatment of its claim in the 2019 Case.  Res judicata bars a party and its privies from relitigating issues that were or could have been raised in a prior

---

[1] *aff'd on other grounds sub nom. Carrieri v. Jobs.com, Inc.*, 301 B.R. 187 (N.D. Tex. 2003), *aff'd*, 393 F.3d 508 (5th Cir. 2004).

4

action that received a final judgment on the merits. *Ries v. Paige (In re Paige)*, 610 F.3d 865, 870 (5th Cir. 2010). For a claim to be barred by res judicata, four elements must be met: "the parties must be identical in both suits, the prior judgment must have been rendered by a court of competent jurisdiction, there must have been a final judgment on the merits and the same cause of action must be involved in both cases." *Id*. (quoting *Nilsen v. City of Moss Point, Miss.*, 701 F.2d 556, 559 (5th Cir. 1983)). "Additionally, where the four elements of the res judicata test are met, [a court] must also determine whether 'the previously unlitigated claim could or should have been brought in the earlier litigation.'" *Id*. (quoting *D–1 Enters., Inc.*, 864 F.2d at 38).

Three of the four elements of res judicata are met here. The parties are identical in the 2019 Case and 2022 Case—both the Beals and Capital One were privy to the confirmation of the 2019 Plan and are now the parties to this claim objection. Case No. 19-50053, Notice of Hearing on 2019 Plan, ECF No. 67; Case No. 19-50053, Order Confirming 2019 Plan, ECF No. 77. The Court is a court of competent jurisdiction to enter an order confirming a chapter 13 plan. 28 U.S.C. §§ 1334(a), 157(b)(2)(L); Misc. Order No. 33 Order of Reference of Bankruptcy Cases, U.S. District Court for N.D. Tex. And the same "causes of action" are involved in both cases—Capital One's claim in the 2022 Case is based on the same contract liability as its claim in the 2019 Case.

The remaining element, that there has been a final judgment on the merits, is not met here. Normally, an order confirming a chapter 13 plan is a final judgment. *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 269 (2010). However, "[w]hen a Chapter 13 case is dismissed prior to completion, the confirmed plan is voided and neither res judicata nor collateral estoppel apply because there is no longer a final judgment." *In re Wertz*, 557 B.R. 695, 705 (Bankr. E.D. Ark. 2016). That is because "the pre-discharge dismissal of a bankruptcy case

returns the parties to the positions they were in before the case was initiated" and "restore[s] all property rights to the position in which they were found at the commencement of the case." *Wells Fargo Bank, N.A. v. Oparaji (In re Oparaji)*, 698 F.3d 231, 238 (5th Cir. 2012) (quoting *In re Sanitate*, 415 B.R. 98, 105 (Bankr. E.D. Pa. 2009)). Therefore, when a bankruptcy court dismisses a bankruptcy plan without granting a discharge, "the court's acceptance of that plan [is] negated and the parties [are] no longer bound by its terms." *Id*.

Res judicata does not apply to bind Capital One to the terms of the 2019 Plan, nor does it bar the Beals from asserting their breach-of-contract claim against Capital One in this case.

## II. Breach of Contract

### a. The Holder Rule

The Beals' breach-of-contract claim is based on the following provision of the Contract:

> **NOTICE: ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.**

Case No. 22-50000, Claim No. 8-1, Part 2 at 2. This provision brought the Contract in compliance with the "Holder Rule," which was promulgated by the Federal Trade Commission and "requires sellers to include language in consumer credit contracts that preserves a consumer's defenses and claims" against assignees of a contract. *In re Beal*, No. 19-50053-rlj13, 2019 WL 5057942, at *1 (Bankr. N.D. Tex. Oct. 8, 2019). The rule "protects consumers from being legally obligated to pay a creditor-assignee … to the extent of damages caused by the *seller's* [misconduct]." *Id*. at *2 (emphasis in original). Capital One is assignee of the Contract. In the 2019 Case, the Court applied the Holder Rule to allow the Beals to reduce a creditor-assignee's claim. *Id*. That decision was based on the failure of the original contractor, Reagor-

Dykes, to uphold its obligations under another vehicle-sale contract. *Id*. Here, like in the 2019 Case, the Holder-Rule language in the Contract expressly allows the Beals to bring claims against Capital One, as an assignee, that they would have held against Reagor-Dykes. The Court will accordingly determine whether Capital One's claim should be reduced based on the Beals' breach-of-contract claim.

### b. Failure to Deliver Title

The Beals contend that Reagor-Dykes breached the Contract by never supplying the Beals with a title to the Vehicle. Four elements must be established to prevail on a claim for breach of contract: "(1) a valid contract existed between the plaintiff and the defendant; (2) the plaintiff tendered performance or was excused from doing so; (3) the defendant breached the terms of the contract; and (4) the plaintiff sustained damages as a result of the defendant's breach." *Atrium Med. Ctr., LP v. Hous. Red C LLC*, 546 S.W.3d 305, 311 (Tex. App.—Houston [14th Dist.] 2017), *aff'd*, 595 S.W.3d 188 (Tex. 2020).

First, a valid contract existed between the Beals and Reagor-Dykes. "[A] valid contract requires a meeting of the minds, an offer and an acceptance." *Roach v. Dickenson*, 50 S.W.3d 709, 713 (Tex. App.—Eastland 2001, no pet.). The Contract outlines express terms the Beals must comply with for the purchase of a specified Ford F-150, and it was signed by Bruce and Karen Beal. The Contract also contains a provision signed by a Reagor-Dykes representative assigning Reagor-Dykes' interest in the Contract to Capital One. That both parties signed the Contract, which defined the parties' duties, demonstrates that the Beals and Reagor-Dykes had a meeting of the minds on the terms of the deal and that Reagor-Dykes accepted the Beals' offer to purchase the Vehicle. A valid contract was formed.

Second, Reagor-Dykes breached the Contract. The Contract places numerous obligations on the Beals, while placing only one express obligation on Reagor-Dykes—to deliver the Vehicle to the Beals. ECF No. 22-50000, Claim No. 8-1, Part 2 at 2 ("By signing this contract, you choose to purchase the vehicle on credit according to the terms of this contract."). Implied in this Contract, however, is a requirement to deliver title to the Vehicle to the Beals. "A contract includes not only the promises set forth in express words but also, in addition, all such implied provisions as are indispensable to effectuate the intention of the parties and as arise from the language of the contract and the circumstances under which it was made." *Breach of implied promises, generally*, 23 WILLISTON ON CONTRACTS § 63:21 (4th ed.); *see also Universal Health Servs., Inc. v. Renaissance Women's Group, P.A.*, 121 S.W.3d 742, 747–48 (Tex. 2003) (A court may supply implied terms to a contract "when there is a satisfactory basis in the express contracts of the parties which makes it necessary to imply certain duties and obligations in order to effect the purposes of the parties in the contracts made.").

Without title, the Beals are unable to register or insure the Vehicle. Without registration or insurance, the Beals cannot legally drive the Vehicle. The entire purpose of the Contract—for the Beals' purchase of a truck for their personal use—is nullified. Transferring title to the Vehicle along with the Vehicle itself is thus a necessary implied term of the Contract. Reagor-Dykes never performed under this implied term and therefore breached the Contract.

Third, the Beals were excused from performing under the Contract because of Reagor-Dykes' breach. "[W]hen one party to a contract commits a material breach of that contract, the other party is discharged or excused from further performance." *Bartush-Schnitzius Foods Co. v. Cimco Refrigeration, Inc.*, 518 S.W.3d 432, 436 (Tex. 2017) (quoting *Mustang Pipeline Co. v. Driver Pipeline Co.*, 134 S.W.3d 195, 196 (Tex. 2004)). "In determining the materiality of a

breach, courts consider, among other things, the extent to which the non-breaching party will be deprived of the benefit that it reasonably could have anticipated from full performance." *Leonard v. Knight*, 551 S.W.3d 905, 910 (Tex. App.—Houston [14th Dist.] 2018, no pet.). As Reagor-Dykes' failure to provide title deprived the Beals of any possible benefit from the Vehicle, Reagor-Dykes committed a material breach that excused the Beals from performing under the Contract.

Finally, the Beals suffered damages as a result of Reagor-Dykes' breach. Direct damages recoverable on a breach-of-contract claim are those that deprive the plaintiff of the benefit of his bargain. *Signature Indus. Servs., LLC v. Int'l Paper Co.*, 638 S.W.3d 179, 186 (Tex. 2022). By receiving an undrivable truck, the Beals were completely deprived of the benefit of their bargain and accordingly suffered direct damages from Reagor-Dykes' breach.

The elements of a claim for breach of contract are met here, and by completely depriving the Beals of the benefit of their bargain, Reagor-Dykes' breach was material. When a party commits a material breach, the other party may abstain from performance and rescind the contract. *Nature of rescission and restitution as a remedy for repudiation or breach of contract*, 26 WILLISTON ON CONTRACTS § 68:2 (4th ed.); *see also Henry v. Masson*, 333 S.W.3d 825, 840 (Tex. App.—Houston [1st Dist.] 2010, no pet.) (When a party commits a material breach, "[t]he non-breaching party must thus elect between two courses of action—continuing performance under the contract or ceasing to perform."). The Beals' surrender of the Vehicle in the 2019 Case, their agreement to allow the automatic stay to be lifted, and their objection to Capital One's claim here demonstrate their desire to rescind the Contract, cease any performance under it, and thus allow Capital One to collect the Vehicle. Because the Beals have the right to rescind the Contract due to Reagor-Dykes' material breach, the Court will deem the Contract rescinded

and nullified. Capital One accordingly has no grounds for its claim against the Beals and the full amount of the claim will be disallowed under 11 U.S.C. § 502(b)(1).

### III.     Conclusion

Because the Court dismissed the 2019 Case, confirmation of the 2019 Plan was not a final judgment on the merits for the purposes of res judicata. The doctrine of res judicata thus does not limit Capital One's claim to its treatment in the 2019 Case, nor does it prevent the Beals from bringing their breach-of-contract claim. Under the Holder-Rule language in the Contract, the Beals may bring any claims under the Contract against Capital One as an assignee. As Reagor-Dykes committed a material breach under the Contract, the Beals have a valid claim against Capital One for breach of contract, and the Contract is accordingly rescinded and nullified. Without a valid claim under the Contract, Capital One's claim against the Beals in this case is disallowed in its entirety.

### End of Memorandum Opinion ###